■ MILDRED SCHECHTMAN, Respondent, v JOHN W. LAPPIN et al., Appellants, et al., Defendant.—Judgment, Supreme Court, New York County (Robert Doran, J.), entered October 11, 1988, which, upon a jury verdict in favor of the plaintiff, awarded plaintiff judgment in the amount of $122,654.06, unanimously affirmed, without costs.

This personal injury action is predicated upon plaintiff's claim that she injured her hip and wrist when she tripped and fell over an oil filler cap in the sidewalk in front of a residential building owned by the defendants, located at 134 East 19th Street in Manhattan. This building is located in the historic landmark Gramercy Park area. Outside defendants'

building there was an ironwork fence extending beyond the building line, thereby narrowing the sidewalk area. The basis of liability is that the filler cap and adjoining area of the sidewalk were maintained in an unsafe manner, in that the cap unevenly protruded from the sidewalk.

Plaintiff testified that on the afternoon of October 12, 1985, between 3:00 and 3:30 P.M., while wearing flat oxford shoes and looking straight ahead, she was walking on East 19th Street, in front of the defendant's building, when her right foot made contact with an oil filler cap and went into a hole in the concrete immediately abutting the cap, causing her to trip and fall on her right side. When she tripped, she tried to break her fall with her right hand and wrist, and was in such great pain when she made contact with the sidewalk, that she could not get up. She remained on the ground for some five minutes, calling for help, until an unidentified couple, who were passing by, came to her aid. The couple assisted her home by a taxicab. Once at home, plaintiff telephoned for an ambulance, which transported her to Beth Israel Hospital where she was initially treated for her injuries.

Plaintiff presented the testimony of an expert witness who examined the oil cap and sidewalk area one year after the accident, on October 12, 1986. The expert found that it was probable that the condition of the cap and the immediately surrounding sidewalk were the same as they had been a year earlier, when the accident occurred, since there were no signs of recent changes. He testified that there were several holes in the sidewalk and that the oil filler cap, which protruded one-half inch above the surrounding area, was not maintained in accordance with good and accepted safety standards because it was not tapered or flush with the surrounding surface and, in addition, was located in that part of the sidewalk which bore the mainstream of traffic instead of near the curb. Photographs of the area were submitted into evidence.

The defendants' position at trial was that the accident did not occur as described by the plaintiff. The defendants testified that even though they were at home on the date of the alleged accident, which was the Columbus Day holiday, they knew nothing about it until they were later sued, inferring that no accident had occurred at that time. Defendant John Lappin testified that between 3:00 and 3:30 P.M., the time of the alleged accident, he was canning tomatoes in his kitchen near the window which directly overlooked the area of the sidewalk in question and neither saw an accident nor heard plaintiff's

cries for help. Mrs. Lappin similarly testified that she too was at home that afternoon and was never aware of any accident.

Plaintiff introduced into evidence, as exhibits, a bill dated October 14, 1985 and a check dated October 15, 1985, which demonstrated that a repairman, one John Yonkey, had come to defendants' premises on the date of the accident for the purpose of either performing sidewalk repairs or viewing the sidewalk in preparation for future repairs, which were completed by October 14, 1985. These repairs were not made to the area near the oil cap but were made to the seams near other concrete slabs. When Mr. Lappin was questioned concerning these repairs, he testified that he had noticed damage to these seams some two or three months prior to the accident and had made an appointment with Mr. Yonkey to come over during the Columbus Day weekend to look at the sidewalk. He further testified that Mr. Yonkey came at 12:00 noon on October 12, 1985, and that they walked around the sidewalk together to discuss the repairs to be made which did not include the sidewalk around the filler cap area.

During summation, the evidence of Yonkey's repairs was used by plaintiff's attorney to impeach the credibility of the defendants. He argued that the defendants were not truthful when they claimed that they knew nothing about the accident until months later because it was unlikely that Yonkey would come on a holiday weekend to make nonemergency repairs, thereby suggesting that defendants, in fact, were aware of the accident at the time it happened and arranged to have repairs made immediately to correct conditions on the sidewalk which they mistakenly thought had been the cause of plaintiff's fall. Counsel argued that the Lappins' denial of knowledge of the accident was to foster the impression that no such accident had occurred and that plaintiff was lying when she testified that she tripped and fell over this filler cap.

At the conclusion of the trial, the jury returned a verdict in plaintiff's favor, finding the defendants negligent, and apportioning damages 62% against the defendants and 38% against the plaintiff.

We reject defendants' claim that the alleged defective condition was so trivial as to preclude a finding of negligence. It has long been the rule that where a condition in a sidewalk is so constructed as to accommodate a special use of the adjoining landowner, that special use imposes upon the landowner the stringent duty to the general public of maintaining that area of the sidewalk in a safe condition (e.g., *Trustees of Vil. of*

*Canandaigua v Foster,* 156 NY 354; *Nickelsburg v City of New York,* 263 App Div 625). That the oil filler cap here is such a "special use" cannot be disputed since it is used to facilitate the delivery of fuel oil to defendants' building. There is no longer any requirement that a defective condition in a sidewalk be of any certain size before it can give rise to liability. *(E.g., Wilson v Jaybro Realty & Dev. Co.,* 289 NY 410; *see also, Taylor v New York City Tr. Auth.,* 63 AD2d 630; *Smith v City of New York,* 38 AD2d 965.) The question of whether or not a dangerous or defective condition exists depends on the peculiar facts and circumstances of each case and is a question of fact for the jury, and liability will result where the condition is found to be hazardous to pedestrians. *(Supra.)* Here, there was sufficient evidence to support the jury's determination of defendants' liability in that regard, and there is no basis in the record to disturb that determination.

Nor do we find merit in defendants' argument that the court erred in permitting the plaintiff to submit evidence of the subsequent repairs. While it is true that evidence of repairs made after an accident is not admissible as an admission of negligence or culpability in causing the injury, subsequent acts of repair may be shown for any other relevant purpose. (Richardson, Evidence § 168 [Prince 10th ed].) Here, plaintiff did not offer proof concerning the repairs for the purpose of establishing negligence. Indeed, it was made clear that the repairs were made to an area never claimed to be a cause of the accident. Instead, plaintiff submitted that evidence to impeach the defendants' credibility and inferentially impugn their denials of the happening of the accident on the day it occurred. Accordingly, the admission of this testimony into evidence was not error. While defendants now claim that the zealous arguments on this point during the plaintiff's summation were so egregious as to require a new trial, defendants failed to object or move for a mistrial at the time. In any event, the selective presentation by the defendants of isolated instances of rhetorical hyperbole during counsel's lengthy summation does not properly reflect the over-all tenor of the summation, when viewed in perspective.

Finally, on this record there is no basis to find that the trial court erred in denying a jury viewing of the scene. CPLR 4110-c permits the jury to view the place where an accident occurred when the court is of the opinion that such a viewing will be helpful to the jury in determining any factual issue. The decision whether to order a viewing is within the sound discretion of the Trial Judge. (CPLR 4110-c [1]; *Tubular Prods.*

*v Jacobson,* 138 AD2d 371.) Here, the trial court did not abuse that discretion since there was no significant dispute as to the appearance of the filler cap and surrounding concrete, and the jury was apprised of the nature of the scene by the graphic photographs introduced into evidence by each side and referred to in the expert testimony. Concur—Sullivan, J. P., Ross, Carro, Milonas and Ellerin, JJ.